[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This dissolution action was brought to the court on September 8, 1998 and tried to the court on diverse days beginning on June 20, 2000 and concluding on September 1, 2000. The parties were married on March 4, 1988 in Las Vegas, Nevada. Both parties have resided in the state of Connecticut for at least one year prior to the bringing of this complaint. No minor children were born to the parties during the marriage. Neither party has received financial assistance from the state of Connecticut or any municipality therein. The court has jurisdiction to hear this matter.
Based on the credible evidence, the court finds the following. At the time of trial the plaintiff wife was 54 years old and the defendant husband 69. The plaintiff had unspecified health problems and may require surgery. The defendant has been hospitalized since the date of separation in April 1998 as he suffers from a variety of conditions: diabetes, high cholesterol, and problems with his back and knee and his shoulder for which he may require surgery.
The plaintiff is a successful realtor of 24 years experience. The defendant also has a real estate broker's license although he spent many years as a car salesman. As a salesman he earned approximately $30,000 per year. He retired in 1992, grew bored with retirement and returned to work only to discover that his income from social security was reduced accordingly. He retired again, engaging in gardening and landscaping the residential property. He also continued to maintain his realty business but did not report a profit. In 1994 his adjusted gross income was $30,069. Thereafter in 1995 his adjusted gross income was $7656, in 1996, $6573, in 1997, $340 and in 1998, $7976. In 1999 he worked part-time at a car dealership. His adjusted gross income for that year was $15,317.
Throughout these years the plaintiff operated her own realty business and deducted business expenses. She reported adjusted gross income as follows: in 1995, $11,837; in 1996, $13,916; in 1997, $13,102; in 1998, CT Page 12840 $41,321. In 1999 income listed on her W-2 was $56,108.63. This pattern demonstrates that in the early years of the marriage the parties maintained their own share of household expenses and savings with the defendant earning somewhat more from his employment and the plaintiff's income supplementing the last of child support payments she received. After 1995 the greater income was earned by the plaintiff. Her best earning years as reported occurred after the separation.
During the marriage the plaintiff's two daughters, then minors, resided with the parties. The defendant's children from a prior marriage were welcomed into the home and his son lived with them for 2 1/2 years. The families were compatible and the plaintiff's daughters grew very fond of the defendant. Before the defendant's retirement the parties enjoyed trips to Atlantic City and Las Vegas, to horse races and dog tracks. The defendant bought jewelry for the plaintiff, often from his gambling winnings. They also spend money on furnishings and improvements to the Hilltop Road home.
At the time of their marriage, the parties had few assets. The plaintiff had obtained the home at 84 Hilltop Road, Naugatuck, as a result of the dissolution of her first marriage. When the defendant moved into her home in 1986 she paid her former husband $25,000 for his interest in the home by taking an equity loan on the property. Her total indebtedness was increased to $65,000. She presently owes $30,000 on the Hilltop property. The defendant owned no property having lost a home in Prospect substantially due to gambling losses. He maintained no checking or savings accounts then nor throughout this marriage until after the separation of the parties. Throughout the marriage the plaintiff maintained her own individual checking account into which she deposited her income and most of that of the defendant's. She gave him cash for his daily use and she paid the bills from her account. If the defendant needed money he had to ask the plaintiff for it. Any excess money was deposited to a savings account in the plaintiff's sole name. Since the separation the plaintiff has paid the defendant's car insurance, costs of his prescription medications and costs of his continuing education courses as a broker.
The defendant found that having to continually ask for money was demeaning. One year before their separation he complained that he had nothing in his name. The plaintiff believed that buying a condominium and registering it in the defendant's sole name would assuage the defendant's feelings and provide him with an opportunity to manage realty. The parties purchased a unit in October 1997. The purchase price of $27,000 was taken from the savings account in the plaintiff's name. The property was sold in December 1997 for $57,900 and the profit was used to purchase another condominium unit at 76-2 Lantern Drive for $29,000 on January CT Page 12841 13, 1998. This property was also placed in the defendant's individual name. Another condominium unit had been purchased in November 1997 for $27,000. at 30 Roundtree Drive. This was also placed in the defendant's sole name.
In April 1998, the defendant left the marital residence after a visit to his sister in Florida. While there he opened up his own charge account and took cash advances on the plaintiff's VISA card at the Seminole Indian Casino near his sister's home. After confronting the' defendant with these expenses, the plaintiff placed a temporary hold on the use of credit cards. Subsequently, while shopping at Home Depot the defendant was embarassed to discover that he could not charge his purchases. He moved into the Roundtree Drive condominium which has 3 bedrooms and 1 1/2 baths. Although he rented out the Lantern Park Drive unit he failed to make necessary repairs and obtain additional tenants to keep it productive.
During the pendency of this action the defendant placed a mortgage of approximately $9500 on the Lantern Park property. He used it to pay bills and for a personal expense. He then borrowed $60,000 against the Roundtree Drive property but this mortgage was paid back shortly after by court order (Stevens, J.).
The plaintiff closed out an account in her name at Paine-Webber in the amount of $11,717 and spent the funds. This amount has been credited to her in the orders which follow. In addition, she failed to list an IRA account with Oppneheimer Fund for $3000 on her financial affidavit and this amount has also been credited to her.
In entering the following orders the court has considered the criteria set forth in General Statutes 46b-62, 46b-81 and 46b-82. Based on the foregoing findings the court orders the following:
1. The marriage is dissolved on the grounds of irretrievable breakdown.
2. Neither party is awarded alimony.
3. The plaintiff shall retain those items of personal property and furnishings in her possession and the defendant those items in his personal possession.
4. The plaintiff shall retain ownership of the real property located at 84 Hilltop Road, Naugatuck. She shall be responsible for paying the mortgage, real estate taxes and insurance on the property.
CT Page 12842 5. The defendant shall retain ownership of the condominium units at Roundtree Drive and 76-2 Lantern Park Drive. He shall be responsible for paying mortgages, taxes, insurance, condominium fees, maintenance, repairs and other costs associated with those properties.
6. The defendant shall obtain the rent escrow of $627.08 and retain his account at Naugatuck Savings Bank.
7. The plaintiff shall retain the General DataCom stock, her IRA accounts and her accounts at Naugatuck Savings Bank.
8. Each party shall secure his/her own medical insurance.
9. Neither party is awarded attorney's fees.
10. The parties are responsible to pay the liabilities which appear on their financial affidavits.
All other claims for relief not expressly addressed herein have been rejected.
Counsel is commended for their presentation of their clients' respective positions in a difficult case.
Sandra Vilardi Leheny, J.